UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

M. by and through her parents and guardians :
MR. AND MRS. M., :
       Plaintiff, :
        :
       v. :     CASE NO. 3:05-cv-0177 (WWE)
        :
STAMFORD BOARD OF EDUCATION, :
CITY OF STAMFORD :
B.T., individually :
MARIA FIORI, individually :
CRYSTAL FUTRELL, individually, :
       Defendants. :

**MEMORANDUM OF DECISION ON
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff M., a disabled child, brings this lawsuit by and through her parents

against defendants Stamford Board of Education; City of Stamford; Maria Fiori,

Assistant Principal of Westhill High School in Stamford, Connecticut where plaintiff was

enrolled; Crystal Futrell, employee of the Board of Education and the city of Stamford

assigned to supervise plaintiff (the Board of Education, Stamford, Fiori and Futrell will

be collectively referred to as the "School Defendants"); and B.T., a former student at

Westhill High School, alleging (1) violations of the Individuals with Disabilities Education

("IDEA"), 20 U.S.C. § 1400 <u>et seq.</u>, and 42 U.S.C. § 1983 against the Board of

Education, Fiori and Futrell; (2) assault and battery against B.T.; (3) violations of the

Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 against

Fiori and Futrell; (4) negligence against the Board of Education, Fiori and Futrell; (5)

statutory liability against Stamford; (6) reckless and wanton conduct against B.T.; and

(7) violations of Title IX, 20 U.S.C. § 1681(a), against the Board of Education. Now

pending before the Court is the School Defendants' Motion for Summary Judgment (Doc. #101).[1]

The Court has jurisdiction over plaintiff's claims, except as discussed below, pursuant to 28 U.S.C. § 1331 over plaintiff's federal law claims and pursuant to 28 U.S.C. § 1367 over plaintiff's state law claim.

## FACTS

At the time of the events alleged in the Amended Complaint, plaintiff was a sixteen-year old sophomore in the special education program at Westhill High School in Stamford, Connecticut. A Connecticut probate court has ruled that plaintiff is incompetent and has appointed plaintiff's father as her guardian and conservator under state law. Plaintiff's parents, as her next friends, representatives and natural guardians, have brought this suit on her behalf.

The Board of the Education provides special education and related services to students in Stamford, Connecticut. It is a recipient of federal funds under Title IX.

Defendant Fiori was, at all relevant times, the Assistant Principal of Westhill High School in Stamford, Connecticut and an employee of the Board of Education and Stamford. Plaintiff is suing Fiori in her individual capacity. Among other responsibilities, Fiori oversees special education at Westhill High School and Educational Assistants, including defendant Futrell.

---

[1]     Defendant B.T. has not filed a Notice of Appearance in this case and is not involved in this instant motion. Accordingly, counts II and VI, which make allegations solely against defendant B.T., are not addressed in this Memorandum of Decision.

Defendant Futrell was, at all relevant times, a paraprofessional responsible for supervising plaintiff at Westhill High School. She was an employee of the Board of Education and Stamford and is being sued in her individual capacity.

Plaintiff had an Individualized Education Plan ("IEP") in effect from April 2002 through April 2003 dated April 3, 2002.

On October 31, 2002, plaintiff was followed home by two classmates. Plaintiff's mother called Fiori to express her concerns about this incident and plaintiff's safety at school in general. At a Planning and Placement Team ("PPT") meeting between plaintiff's parents, Fiori and school psychologist Theresa Telesco, it was decided that plaintiff would be assigned a one-on-one aide for supervision. Defendant Futrell was subsequently assigned as the aide. No changes were made to plaintiff's IEP.

According to the plaintiff, Futrell was given no specific training on how to supervise disabled students in general or plaintiff in particular. Further, plaintiff alleges that Futrell was not informed on how to handle the myriad situations that arose in her supervision of plaintiff.

On November 20, 2002, another PPT meeting was held during which plaintiff's mother shared her concerns regarding plaintiff's supervision. No changes, however, were made to plaintiff's IEP.

Although plaintiff indicates that there were problems with Futrell's supervision during the time after her assignment, there is no indication in the record that plaintiff or her parents sought to remedy their concerns or complain to Fiori regarding them. Further, there is no evidence in the record that plaintiff or her parents sought to change plaintiff's IEP.

Martha Brown, one of plaintiff's teachers, wrote a note to Fiori on February 5, 2003 stating:

> 2/4/03      [Defendant B.T.] asked [plaintiff] to have sex. What he said was "will you please come with me?" and [plaintiff] says she knows what he's talking and always says <u>no</u>. This same conversation has taken place 4-5 times and always happens during [period] 6 as [plaintiff] leaves room 101 and goes to the cafeteria unescorted. [Plaintiff] says she has told Crystal [Futrell] about this.
>
> 2/3/03      Christina [another student] reports that [B.T], when she was on her way from [room] 401 to [room] 302 for health, was waiting for her at the bottom of the stairs and said that he wanted her to go with him to "somewhere private." Christina said "no" and he grabbed her arm with one hand and grabbed her neck with his other hand. She got away.
>
> This kind of incident has happened 5 times or more. Christina has been walking to several of her classes with Crystal, [plaintiff] and Theodore [another student]. (emphasis in original)

After receiving the letter, Fiori investigated B.T.'s placement within the school as well as his academic record. Fiori arranged for home instruction for B.T. by the middle of February and B.T. stopped attending Westhill High School by February 11, 2003. Fiori stated that B.T. may have attended school several more times in February, attendance records sometimes being inaccurate. He was officially withdrawn on March 5, 2003.

Some time in late February 2003, according to Telesco's notes of her meeting with plaintiff, B.T. approached plaintiff during lunch and asked her:

> to go down to have sex with him. She said no, but she followed him down. She said there was no physical coercion.... She said once he was down there, he pulled her pants down, tried to put [his penis] in [her vagina], but she wouldn't let him. She told him no because she did not want to get pregnant. And he said it would be fun. She told me that there was no penetration. They went up to lunch separately

4

> afterwards.  There [was] no forced sex.  He forced her to pull
> her pants down.  He stopped because she wouldn't let him.

In her deposition, plaintiff stated that B.T. "stuck" his penis in her vagina.

Plaintiff did not tell anyone of the assault until May 5, 2003 in a meeting with Telesco.  This meeting was in response to plaintiff's removal from an after-school job at the Tandet Center.  Following their meeting, Telesco informed Department of Children and Families, plaintiff's grade administrator, plaintiff's parents and the principal of plaintiff's statements.  Stamford police also investigated the incident and concluded that due to the age and intellectual limitations of the students, their actions were not likely criminal.

On May 9, 2003, plaintiff's mother met with Fiori and Telesco regarding the incident.  At this meeting, plaintiff's mother requested home tutoring for plaintiff as plaintiff was afraid to go back to school.  Following this meeting, the Stamford police arranged for plaintiff to be interviewed by the Child Guidance Clinic.  Plaintiff's mother also had plaintiff tested to see if she was pregnant or had any sexually transmitted infections.

According to plaintiff, she has had nightmares and difficulty sleeping for which medication was prescribed by a psychiatrist.  In addition, she asserts that she is embarrassed by the incident and has trouble trusting people.  After the incident, plaintiff's parents enrolled her at the Foundation School, a private school for children with disabilities.

**DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 242.

**COUNT I**

In Count I, plaintiff alleges that defendants violated her rights pursuant to the IDEA, 20 U.S.C. § 1400 et seq., and 42 U.S.C. § 1983.  Defendants respond by recognizing, inter alia, that the IDEA requires the exhaustion of administrative remedies and claiming that plaintiff's failure to exhaust the administrative remedies under the

6

IDEA precludes the Court from exercising subject matter jurisdiction over plaintiff's claim.

The lack of subject matter jurisdiction may be raised at any time in the judicial process.  Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 740 (1976).  If and when a court observes that it is without subject matter jurisdiction, it must dismiss the action.  See Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008).  "Generally, litigants cannot waive subject matter jurisdiction by express consent, conduct, or estoppel."  Doe v. West Hartford Bd. of Educ., 2000 U.S. Dist. LEXIS 6521, *5 (D. Conn. Mar. 3, 2000) (citing 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3522 at 66-67).

The IDEA provides federal grants to states so that they may in turn provide disabled children with "a free appropriate public education" in the least restrictive, appropriate environment.  See 20 U.S.C. §§ 1400(d)(1)(A), 1401(8), 1411(a)(1) & 1412(a)(5)(A).  Under the IDEA, the student's educators and parents meet and jointly develop an IEP for each year of the child's education.  See Polera v. Bd. of Educ. of the Newburgh Enlarged Stamford Sch. Dist., 288 F.3d 478, 482 (2d Cir. 2002); 20 U.S.C. §§ 1401(11), 1414(d); see also P.J. v. Conn. Bd. of Educ., 788 F. Supp. 673, 676 n.1 (D. Conn. 1992) ("The IEP is produced by what is known as the planning and placement team, which must include a qualified special education representative of the school board, the child's teacher, and one or more of the child's parents, and may also include individuals who evaluate the child or provide special education services to the child.").  It is through the IEP that the school may monitor the student and her progress.  Polera, 288 F.3d at 482.

The IDEA provides for procedural safeguards through which a parent can ensure her child's education.  20 U.S.C. § 1415(a).  These procedural safeguards include the rights "to examine all records relating to [the] child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child and to obtain an independent educational evaluation of the child," id. § 1415(b)(1), written notice prior to any changes in the child's identification, evaluation or educational placement, id. § 1415(b)(3), "an opportunity to present complaints with respect to" such matters, id. § 1415(b)(6), and, whenever any such complaint is made, the right to "an impartial due process hearing ... by the State educational agency or by the local educational agency," with corresponding rights to be accompanied and advised by counsel, to present evidence and cross-examine witnesses, to receive a written record of proceedings, and to receive written findings of fact and decisions.  Id. § 1415(f)(1) & (h).

The specifics of the administrative process by which a parent can challenge deficiencies in the IEP are proscribed in accordance with state procedures.  In Connecticut, this is governed by section 10-76h of the Connecticut General Statutes.

Failure to exhaust the administrative remedies required by the IDEA precludes the court from exercising subject matter jurisdiction over the action.  Cave, 514 F.3d at 245.  This requirement is meant to "channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances."  Polera, 288 F.3d at 487.  The reliance on administrative procedures is meant to ensure that "parents seek changes to a student's program...."  Id. at 483.  A plaintiff must exhaust her administrative remedies

8

even though she has claims under both the IDEA and 42 U.S.C. § 1983. <u>Cave</u>, 514

F.3d at 245 n.2.

In her Seconded Amended Complaint, plaintiff fails to allege that she undertook

any of the administrative procedures required by the relevant federal and state laws,

even though the claim is precisely the kind contemplated by the exhaustion

requirement. Specifically, plaintiff alleges that her rights under the IDEA were violated

by the defendants' failure to adequately supervise plaintiff or adequately address

plaintiff's need to learn self-protection skills. Furthermore, plaintiff alleges in the

recitation of the facts in her Memorandum in Opposition to Summary Judgment that the

Board of Education, Fiori and Futrell failed to properly train and supervise Futrell, failed

to instruct Futrell on how to deal with plaintiff, that Futrell failed to properly supervise

plaintiff and that Fiori failed to convene a Planning and Placement Team meeting to

address plaintiff's parents' concerns.

These issues are precisely the type that would be resolved through an

administrative hearing. As the Court of Appeals for this Circuit has stated:

> Exhaustion of the administrative process allows for the
> exercise of discretion and educational expertise by state and
> local agencies, affords full exploration of technical educational
> issues, furthers development of a complete factual record, and
> promotes judicial efficiency by giving these agencies the first
> opportunity to correct shortcomings in their educational
> programs for disabled children.

<u>Polera</u>, 288 F.3d at 487. Here, had the plaintiff proceeded through the administrative

process provided by the IDEA and section 10-76h, she may have received the desired

oversight and adjustments to her IEP prior to the alleged assault. Furthermore, a

dialogue may have opened up that would have provided better monitoring of M.'s

education and allowed her parents to express their concerns to the school administration.

Because of the failure to exhaust administrative remedies, summary judgment on Count I is appropriate.

**COUNT III**

Plaintiff alleges that defendants Fiori and Futrell deprived her of her rights guaranteed by the Due Process Clause of the Fourteenth Amendment, which provides that "nor shall any State deprive any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment requires that, generally, the state must afford a person due process of law prior to a deprivation of a constitutionally protected liberty or property interest. A plaintiff's rights guaranteed by the Due Process Clause are violated when "state officials engage in conduct of such an egregious nature as to shock the conscience." Bungert v. City of Shelton, 2005 U.S. Dist. LEXIS 23894 (D. Conn. Oct. 14, 2005).

In DeShaney v. Winnebago Cty. Soc. Servs. Dep't, 489 U.S. 189, 195 (1989), the Supreme Court observed that the Due Process Clause does not create an affirmative duty on the part of the state to protect its citizens. Rather, an affirmative obligation only exists where the state has entered "into a special relationship with an individual by engaging in an affirmative act of restraining the individual's freedom to act on his own behalf...." Crispim v. Athanson, 275 F. Supp. 2d 240, 245 (D. Conn. 2003). As the Court in Crispim noted, such special relationships are limited to cases in which the state maintains a custodial relationship with the individual, such as between a

prison and inmate or a mental institution and an involuntarily committed patient and <u>not</u>

where the plaintiff is attending a state-run school.  <u>Id.</u> at 245-48; <u>see</u> <u>also</u> <u>D.R. v. Middle</u>

<u>Bucks Area Vocational Technical Sch.</u>, 972 F.2d 1364, 1370 (3d Cir. 1992) (observing

that a special relationship exists where there is physical custody).  The <u>Crispim</u>

conclusion was premised on the fact that:

> Though school attendance is compulsory in the State of Connecticut, <u>see</u> Conn. Gen. Stat. § 10-184, it creates a relationship quite different from that of a prison and inmate or mental institution and involuntarily admitted patient.  In Connecticut, it is up to the parents of compulsory-school-age children to decide whether education will take place in the home, or in public or private school.  Indeed, ... the primary caretakers of compulsory-school-age children remain their parents, irrespective of the fact that the children are present in school at particular times of the day throughout the school year. While it is clear that children of compulsory-school-age who attend school, regardless of the type of school it is, must submit to the authority of school officials who may engage in disciplinary control over the students, such restriction of freedom does not prevent the students from providing for their basic needs.

<u>Crispim</u> at 248.  The fact that plaintiff M. may be mentally handicapped does not affect

the applicable constitutional standards.  <u>See</u> <u>Dorothy J. v. Little Rock Sch. Dist.</u>, 7 F.3d

729, 732 (8th Cir. 1993) (finding that student's mental disability did not affect the school

officials' constitutional duties to protect the her).

Viewing the facts in the light most favorable to plaintiff, there are no issues

of material fact remaining on which this claim may stand.  Although Fiori and

Futrell allegedly failed to respond to plaintiff's concerns about B.T., such failures,

if any, do not rise to the level required to support a claim for a violation of

plaintiff's Fourteenth Amendment Due Process rights.  Even if, as plaintiff

contends, defendants Fiori and Futrell were aware of B.T.'s sexual invitations to plaintiff and did not respond, such indifference does not create a danger or increase plaintiff's vulnerability.  See Scruggs v. Meriden Bd. of Educ., 2007 U.S. Dist. LEXIS 58517, *39-44 (D. Conn. Aug. 10, 2007) (granting summary judgment on plaintiff's due process claim even where school administrators knew of bullying and did nothing to prevent further beatings); Bungert, 2005 U.S. Dist. LEXIS 23894, at *12-13; see also Dorothy J. v. Little Rock Sch. Dist., 794 F. Supp. 1405, 1422 (E.D. Ark. 1992) ("To hold [school administrators liable for students' bullying] would impose on schools officials an affirmative duty under the Due Process Clause to constantly supervise and protect schoolchildren against any student known to be dangerous while that student is on school grounds. This is a matter best left to state law."), aff'd, 7 F.3d 729.

Therefore, the Court will grant summary judgment as to defendants Fiori and Futrell on Count III.

**COUNT IV**

Defendants also move for summary judgment on Plaintiff's negligence claim against defendants the Board of Education, Fiori and Futrell.  Plaintiff alleges (a) that the defendants had a duty to provide her with adequate supervision and a safe environment while at school; (b) that the defendants breached this duty by (i) failing to establish customs or procedures to ensure supervision; (ii) failing to teach M. self-protective skills; (iii) failing to provide reasonably adequate supervision; and (iv) failing to take action after Brown's note on February 3; and (c) that such breach resulted in the plaintiff's injuries.

Defendants contend that plaintiff's claim is barred by the doctrine of governmental immunity under section 52-557n of the Connecticut General Statutes.

Section 52-577n provides that "a political subdivision of the state shall not be liable for damages to person or property caused by ... negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Conn. Gen. Stat. § 52-557n(a)(2). A state employee can be held liable for negligence in the misperformance of ministerial acts, but has qualified immunity when performing acts "wholly for the direct benefit of the public and [which] are supervisory or discretionary in nature." Violano v. Fernandez, 280 Conn. 310, 318 (2006). Three exceptions limit this qualified immunity:

> first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm ... second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws ... and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence.

Burns v. Bd. of Educ. of City of Stamford, 228 Conn. 640, 645 (1994). The only exception relevant here is for the Board of Education, Fiori and Futrell's failure to act in the case of a perceptible harm to an identifiable person. See Scruggs v. Meriden Bd. of Educ., 2007 U.S. Dist. LEXIS 58517, *69 (D. Conn. Aug. 10, 2007).

Members of the student body of a school belong to a special class of individuals to whom the school administrators and teachers owe a special duty of

care.  Burns at 646.  Administrators can only be held liable, however, if they are aware that their failure to provide adequate supervision would result in the plaintiff's complained injury.

The "identifiable person-imminent harm exception" requires that the danger be limited both in duration and in geography.  Scruggs, 2007 U.S. Dist. LEXIS 58517 at *70.  In cases where the Connecticut courts have held the state actor liable, it has done so on the basis that the duration of the dangerous condition was limited.  See, e.g.,  Purzycki v. Fairfield, 244 Conn. 101, 110 (1998) (holding administrators and school district liable for injuries that occurred during a dangerous condition that was "limited in duration and geographical scope"); Burns, 228 Conn. at 650 (finding superintendent liable for negligence for failing to clear the school's walkways of ice during school day).  In Doe v. Bd. of Educ. of City of New Haven, 76 Conn. App. 296 (2003), and Scruggs, however, the courts ruled that the plaintiffs had not pleaded that the dangerous conditions were limited in scope.

As in Doe and Scruggs, defendants' motion as to plaintiff's claim for negligence against the Board of Education, Fiori and Futrell must be granted. Plaintiff has failed to allege that danger to herself was limited in duration or geographical scope, and her allegations do not specify that she was in danger at a particular time or in a particular place.  Without such limitations, a reasonable jury would not be able to conclude that the potential harm to the plaintiff was significant and foreseeable within the meaning of the section 52-552n.  Scruggs, 2007 U.S. Dist. LEXIS 58517 at *72.  When viewing the facts in the light most

favorable to plaintiff, defendants had no way of being aware with sufficient specificity where and when plaintiff would be assaulted.  Even if defendants should have been aware of the danger that plaintiff faced from B.T., the general nature of such danger precludes a finding of liability upon a theory of negligence.

Therefore, the Court finds that summary judgment is appropriate as to Count IV of the Complaint.

**COUNT V**

Count V alleges that the City of Stamford is liable based on its employees' negligence under section 7-465 of the Connecticut General Statutes.  Because the Court will strike the negligence claims against defendants Board of Education, Fiori and Futrell, Stamford can have no liability under section 7-465.  See Healy v. Cronin, 2006 Conn. Super. LEXIS 2422 (Conn. Super. Ct. Mar. 16, 2006).

**COUNT VII**

In Count VII of her complaint, plaintiff alleges that defendant Board of Education violated her rights under Title IX, 20 U.S.C. § 1681 et seq., by allowing and showing deliberate indifference to B.T.'s harassment and interference with her ability to attend school.  In their motion, defendants argue that defendants' responses to the various events leading up to the alleged assault were appropriate and sufficient.[2]

---

[2]     The defendants read plaintiff's complaint as being against individual defendants Fiori and Futrell.  Plaintiff's complaint makes no such allegation.  Regardless, a claim under Title IX cannot survive against an individual.  See Soper v. Hoben, 195 F.3d 845, 854 (6th Cir. 1999).

A recipient of federal funds under Title IX may be held liable for

discrimination stemming from student-on-student sexual harassment.  Davis v.

Monroe Cty. Bd. of Educ., 526 U.S. 639, 644-45 (1999).  Title IX provides, in

relevant part, that "no person in the United States shall, on the basis of sex, be

excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial

assistance."  20 U.S.C. § 1681(a).  To establish a claim under Title IX for

student-on-student harassment, a plaintiff must show: "(1) the alleged

harassment was so severe, pervasive, and objectively offensive that it deprived

the plaintiff of access to the educational opportunities or benefits provided by the

school; (2) the funding recipient had actual knowledge of the sexual harassment;

and (3) the funding recipient was deliberately indifferent to the harassment."

Kelly v. Yale Univ., 2003 U.S. Dist. LEXIS 4543, *8 (D. Conn. Mar. 26, 2003)

(internal quotations omitted).  Further, liability can only be found in

"circumstances wherein the [funding] recipient exercises substantial control over

both the harasser and the context in which the known harassment occurs."

Davis, 526 U.S. at 645.

The defendants do not deny that the Board of Education is a recipient of

Title IX funds.

### A.      Severity of Harassment

The plaintiff alleges that B.T. engaged in persistent sexual advances and

harassment.  The harassment which is actionable under Title IX is limited to B.T.

leading plaintiff to the school's basement where he proceeded to sexually assault

16

her.[3]  While this occurred only once, because this event followed the February 5

note from Brown to Fiori, it is precisely the type of action covered by Title IX.

See Kelly, 2003 U.S. Dist. LEXIS 4543, at *8-9 ("There is no question that a

rape, as alleged by [the plaintiff], constitutes severe and objectively offensive

sexual harassment under the standard set forth in Davis."); Soper, 195 F.3d at

855 (noting that a sexual assault constitutes "severe, pervasive, and objectively

offensive sexual harassment").

Moreover, following the assault, plaintiff alleges that she did not sleep at

night and had nightmares.  A psychiatrist prescribed medication to alleviate this.

Furthermore, Dr. Lorefice, plaintiff's psychiatrist, reported that plaintiff was

traumatized by the incident and that she had difficulty sleeping, diminished

appetite, was vomiting and losing weight.

Based on the allegations described above, a jury could reasonably

conclude that the sexual assault complained of by plaintiff was "severe,

pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of

access to the education opportunities or benefits provided by the school."  Davis,

526 U.S. at 650.

## B.    Notice by Board of Education

Fiori became aware of the harassment of the plaintiff by B.T. via a letter

sent by Brown to Fiori on February 5.  This note sufficiently alerted Fiori, and

---

[3]      Although the defendants assert that any physical act between B.T. and
the plaintiff was consensual, at this stage, facts must be construed in favor of the non-
moving party.  Liberty Lobby, 477 U.S. at 255.

therefore the Board of Education, to the harassment.  See Murrell v. School Dist. No. 1, 186 F.3d 1238, 1247 (10th Cir. 1999) ("[A] school district is liable if a school official who had actual knowledge of the abuse was invested by the school board with the duty to supervise the [harasser] and the power to take action that would end such abuse and failed to do so.").  In addition, the plaintiff has alleged that Fiori was aware of other sexual activities engaged in by B.T. through the parents of Michelle Bernando, another special education student at Westhill High School.  The questions of material fact regarding notice preclude granting summary judgment in this regard but only as to the harassment that followed the February 5 note.[4]

### C.    Deliberate Indifference

The plaintiff alleges that the deliberate indifference of the Board of Education occurred through the lack of response by Fiori to Brown's February 5 note.  The Court of Appeals for this Circuit has provided that "[d]eliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances" or "when remedial action only follows after a lengthy and unjustified delay."  Hayut v. State Univ. of N.Y., 352 F.3d 733, 751 (2d Cir. 2003).  Further, the deliberate indifference "must, at a minimum, cause [the student] to undergo harassment or make them liable or vulnerable to it."  Davis, 526 U.S. at 645.  The "unreasonable" standard does not turn the inquiry into a negligence standard.

---

[4]    Prior to February 5, Fiori, and therefore the Board of Education, did not have the requisite notice of any harassment of plaintiff by B.T.

Instead, "[d]eliberate indifference is more than a mere reasonableness standard that transforms every school disciplinary decision into a jury question." Doe v. Derby Bd. of Educ., 451 F. Supp. 2d 438, 447 (D. Conn. 2006). That is, to avoid liability, the school district "must merely respond to known peer harassment in a manner that is not clearly unreasonable." Davis, 526 U.S. at 649.

The Court is not persuaded by defendants' citation to Justice Kennedy's dissent in Davis. If defendants are trying to argue that responding to claims like plaintiff's takes resources away from other tasks, then the Court must reply that Congress has, through Title IX, created a structure, upheld in Davis, for the victims of sexual harassment in schools to enforce their rights to a harassment-free education. It is not up to this Court to ignore plaintiff's legal rights because defendants may have to dedicate resources to preventing and responding to complaints of sexual harassment.

Further, to the extent that defendants point out the apparent catch-22 that Justice Kennedy discusses, namely, having to balance the victim's demand for a response against the alleged harasser's claims to due process, Davis at 682-83, the standard established by the majority is one that is deferential to the school's response. By establishing a higher standard than simple negligence - that is, by requiring the plaintiff to show that the school's response was "not clearly unreasonable" - the Supreme Court has created a standard that allows courts to dismiss claims as "not clearly unreasonable" as a matter of law upon a motion to dismiss, summary judgment or upon a directed verdict, as noted by Justice O'Connor's opinion for the Court. See id. at 648-49.

19

Here, there is evidence that would permit a jury to find that the Board of Education made plaintiff more vulnerable to harassment by B.T. after February 5. While the harassment at the hands of B.T. that prompted the note was not preceded by sufficient notice of the requisite specificity, the sexual assault of late February followed the initial harassment and the notice to Fiori. Further, the fact that, as plaintiff alleges, the school failed to take any disciplinary action provides evidence from which a jury could reasonably conclude that the Board of Education's conduct following its notice of B.T. harassment amounted to deliberate indifference.

The Court therefore finds that summary judgment is inappropriate as to Count VII of the Complaint.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment [Doc. #101] is GRANTED as to Counts I, III, IV, V and DENIED as to Count VII. Plaintiff is instructed to file an amended complaint in accordance with the terms of this Memorandum of Decision within ten days.

Dated at Bridgeport, Connecticut, this 7th day of July, 2008.


                             /s/
                         Warren W. Eginton
                         Senior United States District Judge